## PHILLIPS PETROLEUM CO. v. RUBLE.

No. 29850. Feb. 24, 1942.

Rehearing Denied April 14, 1942. Application for Leave to File Second Petition for Rehearing Denied June 16, 1942.

*126 P. 2d 526.*

Don Emery and Rayburn L. Foster, both of Bartlesville, and Harry D. Turner and E. G. De Parade, both of Oklahoma City, for plaintiff in error.

George Miller and George Miller, Jr., both of Oklahoma City, for defendant in error.

DAVISON, J. This appeal involves a judgment for damages for personal inconvenience, annoyance, and discomfort, asserted to have been sustained by A. A. Ruble while occupying residential property belonging to him in Oklahoma City.

Mr. Ruble instituted the action in the district court of Oklahoma county on March 7, 1939, against the Phillips Petroleum Company as defendant. In his petition, as subsequently amended, he sought to recover in one cause of action, damages for alleged permanent injury to his real property in the sum of $2,400, and in another cause of action $599 in damages for personal inconvenience, annoyance, and discomfort. These alleged damages were asserted to have been occasioned by the defendant company's previous maintenance and operation of a power plant known as the Mansion Booster Station, just outside the city limits of Oklahoma City and approximately four blocks from plaintiff's property.

The plant consisted of 35 units. Engines aggregating 8,000 horsepower were used in its operation. The vibration and noises of the engines created by their exhausts caused the asserted temporary nuisance of which complaint is herein made.

The case was submitted to a jury in the trial court, which returned a verdict for the defendant on the first cause of action and in favor of the plaintiff on the second. Judgment was entered accordingly.

The defendant company has appealed, appearing herein as plaintiff in error. No cross-appeal has been taken. Thus the issues before this court involve the second cause of action only.

The order of appearance is reversed in this court, but our continued reference to the parties will be by their trial court designation.

The trial judge, in instructing the jury as to the amount of damages which might be allowed in connection with the second cause of action, applied the rule established by this court in the case of Oklahoma City v. Eylar, 177 Okla. 616, 61 P. 2d 649, as forecast in the third paragraph of the syllabus of that case in the following language:

"The personal inconvenience, annoyance, and discomfort to the occupant of real estate caused by the maintenance by another of a temporary nuisance in the immediate vicinity of said real estate is a separate and distinct element of damage from that of the depreciation of the usable or rental value of the real estate occupied; the measure of such damages being reasonable compensation for the injury."

The rule thus recognized in this jurisdiction is now firmly established. It has been frequently cited and applied with approval in the later decisions of this court. City of Altus v. Tinsley, 185 Okla. 602, 95 P. 2d 635; City of Altus v. Smalling, 185 Okla. 601, 95 P. 2d 617; City of Holdenville v. Kiser, 179 Okla. 216, 64 P. 2d 1223; Oklahoma City v. Myers, 177 Okla. 622, 61 P. 2d 653; Town of Sentinel v. Boggs, 177 Okla. 623, 61 P. 2d 654; Oklahoma City v. Dyer et al., 177 Okla. 620, 61 P. 2d 660.

The defendant does not urge that the rule is inapplicable to the case at bar nor that the trial court adopted an improper method of applying the rule. Its contention is that the rule itself is unsound, and that it should be modified or overruled, and that in this type of case a more definite standard of measuring damages should be established, and that proof by the plaintiff and instructions by the court conforming to the requested standard should be required.

The standard suggested by the defendant as applied to this particular case is the depreciation in rental value of the property occasioned by the maintenance of the nuisance. In order to make the standard legally appropriate the defendant urges that we should classify the injury sustained by the occupant of the property, through annoyance, in convenience and discomfort, as a property injury rather than a personal injury, thus departing from our former views as expressed in the above-cited cases.

Modern judicial thought seeks to avoid fictions. We cannot make a manila rope into a rubber automobile tire by calling it such. Neither can we change an injury to the person into one to property by so denominating it. The fact that the property owner in this type of case is using his property at or during the time he receives the injury does not change the character or type of injury received. A broken arm would not be called an injury to personal property because it was fractured in an automobile collision when the injured person was using his own automobile.

The defendant in presenting its case in its brief and oral argument concedes that where the maintenance of a nuisance results in sickness, the injury is personal, but contends a different classification should neverthless be herein adopted. We cannot approve the view that a difference in classification between property and personal injuries can be justified upon the degree of ag-

gravation or the amount of damage sustained.

There are authorities sustaining, in whole or in part, the position taken by the defendant. These authorities have been well presented, but fail to demonstrate error in our previous views, to which we adhere.

A more definite standard for measuring damages in this type of action might (if not too complex) facilitate judicial administration of the law, but such a standard cannot be approved if legally unsound.

The analysis of authorities contained in our previous opinions need not be supplemented in this case. Defendant's request for modification or repudiation of the rule of the Eylar Case is denied.

It is also asserted by the defendant that the trial court should have, on the company's request, directed a verdict for it as to the second cause of action. Upon this point the defendant says:

"In determining whether or not there has been such a substantial and unreasonable inconvenience and annoyance as a consequence of noise caused by the operation of a proper and lawful industrial plant, operated free from any negligence, as to constitute a cause of action, it is the duty of the trial court to take into consideration the nature of the locality in which the plant was constructed and operated as of the time the alleged nuisance began, the relation of the plant, if any, to any business being conducted generally in that locality, the utility of the plant from a social and community standpoint, the distance and direction of the plant from the plaintiff's property, as well as the gravity, or lack of gravity, of the harm suffered by the plaintiff in the light of all the surrounding circumstances, and a consideration of all those facts in this case would require the trial court to sustain a motion for a directed verdict."

The record discloses that the trial court advised the jury at length upon this point. The defendant does not complain of the form, substance, or accuracy of the instruction given.

The evidence reveals that the portion of the city in which plaintiff's property is situated is used for residential purpose. It was also, subsequent to 1936, within the zone created by the zoning ordinances wherein exploration and development of properties for the production of oil is permitted. This authorized use, however, was not to the exclusion of its continued use for residential purposes.

The power plant of the defendant was installed in close proximity to the city limits and, as previously noted, about four blocks from the plaintiff's property. During a considerable part of the time, during which liability for compensatory damages accrued in this case, it was operated 24 hours per day.

According to plaintiff's testimony, the engines at the plant, especially their exhaust, created considerable noise and vibration of the air. The doors and windows of plaintiff's place of residence rattled until they had been cushioned by towels or other articles. Backfires of the engines during sleeping hours would interrupt the rest of plaintiff and his family.

There were, of course, some variations in the intensity of the disturbance due to shifts of the direction of the wind. Other details of the evidence need not be reviewed herein.

Considering the evidence as a whole, we are of the opinion that the issue was properly submitted to the jury, and so hold. As previously noticed, the defendant does not herein contend that the instruction of the trial court on this point was in any respect inadequate or inaccurate.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. RILEY, J., concurring specially on the rule of stare decisis. GIBSON, J., feels bound by rule adopted in Oklahoma City v. Eylar, 177 Okla. 616, 61 P. 2d 649, and therefore concurs.